Good morning, Your Honors. Valerie Alter of Shepherd, Mellon, Richter, and Hampton on behalf of Petitioner Ruzan Tarakhchyan, who is present in the courtroom. Your Honors, the immigration judge's decision in this case is not supported by substantial evidence for multiple reasons. First and foremost, that Petitioner Ruzan Tarakhchyan never got a fair chance to tell her story. From the very beginning, the immigration judge asked her confusing and leading questions. And when he received an answer that he thought contradicted another statement she had made, rather than fulfill his duty to develop the record as an immigration judge, he stayed silent. And in some cases, one case in particular, he confirmed what he thought was an inconsistency. And rather than ask her to explain that inconsistency, he said, thank you very much, and he stopped there. In doing so, he essentially abdicated his role. Was she represented? She was represented by counsel. So her counsel must have also abdicated his responsibility. He did, but unfortunately, that issue was not raised to the BIA. But even regardless of counsel's own personal issues, the IJ's issues, I think, are more important. Because he asked her a series of questions very, very quickly in which, for example, there was one particular question where he said, and you were arrested at your home. And she said, yes. She had never said she was arrested at her home. She answered yes to his question. That was later raised again as an inconsistency. She could have said no. She could have said, I don't remember. Well, I think, Your Honor. I mean, the judge is entitled to ask questions. In fact, is encouraged to ask questions in immigration cases. But there were other grounds in any event on which he made his final determination. Isn't that right? There were other grounds. But I think in each of those grounds, there is an issue, either in the sense that it does not go to the heart of petitioner's claim for asylum, which is a must. You know, it can't be some peripheral issue. For example, the issue regarding the citizenship of the man who founded her political party. He was an Armenian businessman. And he was living in Yerevan, Armenia, where the petitioner lived. And he had a business there. She didn't know that he was a Russian citizen. And that issue does not go to the heart of her claim for asylum, namely. How about the beating issue? She gave different stories. She was beaten by men or bitten by women. Well, Your Honor, that, I think, is another example of where the immigration judge, in particular, asked a leading question. And when given the opportunity to correct it, she immediately said, no, no, no. They were women. She said she was at a women's prison. And I think the quote is something along the lines of, the immigration judge says, and you said, three men beat you. Approximately three men beat you. Is that what I heard you say? And she says, yes, yes, yes. That is at page 118 of the administrative record. Previously, however, what she had said was, whoever could, they were beating me. She said they. She never said men. Then the immigration judge comes back and says, and you said three men. And I think under the pressure of the case, and I think in particular with the quality of interpretation she was receiving, she said, yes, yes, yes, having only heard the beaten part. And then he said, wait, I thought you said women. And immediately, she says, yes, yes, yes, women. They were women. She made every attempt to correct that as soon as possible. The immigration judge didn't go any further. He didn't say. There were two questions, right? This is now page 118 of the administrative record, line 6. He says, and you said three men beat you. Approximately three men beat you. Is that what I heard you say? And she says, yes, yes, yes. And he says, OK, three. And then there was Mr. Crystal. I think that's her lawyer. Where he says, and there were the same three men every time. Is that her lawyer? I believe so. OK. And was it the same three men every time that you were beaten? Yes. So that she gets asked a question not only by the judge, but also by her own lawyer, both of her two men. And she says, yes. Your Honor, I think. And then the lawyer then says, you know you said that, there were women. And she says, yes, there were women. I mean, you could say she was, I mean, one way of reading this is that she was making it up as she was going along. And we have trial judges who judge these things. I guess, Your Honor, one thing first. I misspoke. Ms. Crystal was actually the government's attorney. OK. I'm sorry. No, that's. OK. But, you know, one of the, somebody else asked. But I think when you look at this. Can we say it's irrational for a trial judge to look at this kind of inconsistency and say, look, I think what this reflects is fabrication? Suppose one of the grounds below is supportable and the others are not. Isn't that enough? That is enough. But I do not think that this particular ground is supportable when viewed in light of the record as a whole. Especially if you look at the record as a whole, the answers are nonsensical. There are so many non sequiturs that show severe, severe translation errors to the point where the interpreter herself was unable to structure simple English syntax in some situations. But the fact that she didn't bring her husband's letter was not of that variety.  that she didn't bring her husband's letter is only relevant if the other issues upon which the IJ based its adverse credibility determination are supported by substantial evidence. And as I- Why is that? Isn't the one ground enough? Which one ground, Your Honor? The fact that she didn't bring the most important document in the matter. Well, as far, as to her not having brought that document, she is only required to bring corroborative evidence if the other basis of the IJ's adverse credibility determination are supported by substantial evidence, as I would argue that they are not. Right, but what we're talking about is what it shows about her credibility. Isn't that right? Well, I don't think you can make a credibility determination based on her failure to bring the letter, especially since she fled Armenia in haste and she brought what she thought would be necessary, specifically government documents. She didn't believe that that particular letter would have been necessary at the time and when she left the country, you know, as quickly as she could. It's hard to believe that the last letter she receives from her husband from prison is something she would just toss when she grabs all this other stuff. If, you know, I wasn't there. I mean, it's hard to say a trial judge is irrational in saying, look, this is the kind of letter you would expect her to have kept, to have kept as a memento, but also to have kept as proof. If she's come to the United States trying to prove that she's persecuted, what more significant evidence would she have?
judges: Kozinski, Rawlinson, Cedarbaum (S Ny)